**Reversed and Rendered and Majority and Dissenting Opinions filed March 30, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00232-CV

---

## HARRIS COUNTY, Appellant

## V.

## BLASA LOPEZ, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2019-69350**

---

### MAJORITY OPINION

Appellee Blasa Lopez filed suit against appellant Harris County for negligence and premises liability. The trial court denied Harris County's plea to the jurisdiction. In two issues, Harris County argues on appeal that the trial court erred by failing to dismiss Lopez's (1) negligence claim and (2) premise liability claim. We reverse and render judgment dismissing the case for want of jurisdiction.

# I. BACKGROUND

The underlying facts are mostly undisputed. Lopez is a self-employed licensed court interpreter who reports to Harris County through the Justice Administration. The government certification for court interpreters requires payment of a $220 fee payable to the state. On March 25, 2019, Lopez entered the Family Law Center located at 1115 Congress Street in Houston, Texas, to interpret proceedings. The Family Law Center ("FLC") is owned by Harris County. At approximately 10:50 a.m., Lopez was on the fourth floor but was needed on the fifth floor. As she entered Elevator #1, the elevator doors slammed on her, smashing her between the doors. She used her right hand to push open the elevator doors, and then entered the elevator, which contained other passengers. One passenger told Lopez that his wife experienced the same occurrence earlier, but he did not specify with which elevator.

Lopez rode the elevator to the fifth floor, exited without incident, and entered the courtroom at 11:00 a.m. Lopez testified that she rubbing her arm and was mad and upset because it hurt and she was in disbelief. Deputy Paul Pryor noticed her distress and asked her what was wrong; Lopez told him that the elevator closed in on her. The Deputy asked her for the elevator information and reported the incident to maintenance.

On September 24, 2019, Lopez filed suit against Harris County, Amtech Reliable Elevator Company of Texas ("Amtech"), and NAES Central, Inc. d/b/a Amtech Elevator Services ("NAES") based on premises liability and negligence pursuant to the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(a)(2). Lopez alleged that the defendants failed to (1) properly maintain, inspect, operate, control and/or service the elevators; (2) maintain the premises in a reasonably safe condition; (3) warn Lopez of the dangerous conditions on the

premises; (4) inspect the premises to discover the dangerous conditions on the premises; and (5) exercise reasonable and ordinary care towards Lopez. Lopez sought damages that included compensation for serious injuries, past and future, past and future medical bills, mental anguish, pain and suffering, loss of enjoyment of life in the past and the future, physical impairment in the past and the future, physical disfigurement in the past and in the future, lost wages, pre-judgment and post-judgment interest, and "any further items of damages that may be supplemented as a result of discovery."

Lopez claimed (1) she was an invitee on Harris County's premises; (2) defendants knew or reasonably should have known of the dangerous condition that posed an unreasonable risk of harm; (3) defendants owed Lopez a duty of reasonable care in the operation and maintenance of the premises, specifically the operation and maintenance of the elevators in the FLC; (4) defendants breached this duty; and (5) the incident was the actual and proximate cause of her injuries, including multiple torn tendons in her right arm.

NAES filed an answer denying Lopez's allegations. Harris County filed a no-evidence and traditional motion for summary judgment and, in the alternative, a plea to the jurisdiction as to both causes of action, alleging that Lopez failed to prove the four elements of her premises liability claim necessary to establish a waiver of immunity under the Texas Tort Claims Act ("TTCA") because she did not prove that Harris County had actual knowledge of the alleged dangerous condition before the incident occurred. Harris County additionally asserted that Lopez's negligence claim should be dismissed because a party asserting a premises defect claim cannot also allege a claim for negligence.

Harris County attached to its motion for summary judgment the affidavit of Juan Garcia ("Garcia"), an employee of Harris County. Garcia was the Elevator Project Manager at the time of the incident; he averred that as part of his job duties,

3

he oversaw the FLC and was in charge of the upkeep and maintenance of elevators. Garcia asserted that Amtech mechanics were the only people qualified to service the elevators. According to Garcia's affidavit, in the six months predating the incident, he had not received any other reports of injuries or incidents with Elevator #1. But Garcia also admitted that the Amtech elevator call record—which was also attached as an exhibit to Harris County's motion for summary judgment—showed that on March 20, 2019, there was a call regarding Elevator #1. The call on that date was listed as "#1 stuck on unknown fl[oor.]" [1CR:60]. According to Garcia, the issue was "fully taken care of" and the elevator was returned to service. On the day Lopez was injured, Garcia stated he was unaware of any dangerous condition of the elevator.

On April 17, 2021, the trial court denied Harris County's no-evidence and traditional motion for summary judgment and plea to the jurisdiction. Harris County timely filed a notice of appeal.[1] *See id.* § 51.014(a); *City of Houston v. Atser, L.P.*, 403 S.W.3d 354, 357 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("An interlocutory appeal may be had when a trial court denies a governmental unit's challenge to subject matter jurisdiction, 'irrespective of the procedural vehicle used.'" (quoting *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006))).

## II.   STANDARD OF REVIEW

Generally, a governmental entity such as Harris County is immune from tort liability. *City of Galveston v. State,* 217 S.W.3d 466, 468–69 (Tex. 2007); *Quested v. City of Houston*, 440 S.W.3d 275, 279–80 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex.*

---

[1] NAES and Amtech are not parties to this appeal.

4

*Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004). However, a defendant may also raise the lack of subject-matter jurisdiction in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Atser, L.P.*, 403 S.W.3d at 357. Upon such a jurisdictional challenge, regardless of the procedural vehicle used, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Blue*, 34 S.W.3d at 555.

We review a challenge to the trial court's jurisdiction de novo. *State v. Holland,* 221 S.W.3d 639, 642 (Tex. 2007). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda,* 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See id.*; *Martinez v. Harris County*, 526 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Quested*, 440 S.W.3d at 279.

When, as here, the governmental unit challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *See Miranda,* 133 S.W.3d at 227. The standard of review for a jurisdictional challenge based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Under this standard, we credit evidence favoring the nonmovant and indulge all reasonable inferences in the nonmovant's favor. *See id.* The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the defendant discharges this burden, then the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the jurisdictional challenge will be sustained. *Id.*

### III. APPLICABLE LAW

The TTCA provides a limited waiver of immunity for tort suits against governmental units. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 611 (Tex. 2000); *Quested*, 440 S.W.3d at 279. Under § 101.021, a governmental unit can only be liable for two types of claims: (1) property damage, personal injury, and death arising from the operation or use of a motor vehicle; or (2) "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021. This includes claims arising from a premises defect because premises defects claims are caused by a condition on real property. *See id.* §§ 101.021(2), .022(a).

Under the TTCA, "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a).

The Texas Supreme Court has clarified that "[t]he Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property." *Miranda*, 133 S.W.3d at 233. Thus, a plaintiff cannot proceed on both a negligence claim and a premises liability claim against a governmental unit for the same alleged acts. *See id.* (citing *State v. Estate of Horton*, 4 S.W.3d 53, 54 (Tex. App.—Tyler 1999, no pet.) (observing that once a claim is determined to be a premises defect, the claimant is limited to the provisions delineated by the section on premises defects and may not assert a general negligence theory)).

A claimant establishes premises liability upon proving: (1) the defendant had control over and responsibility of the premises; (2) a condition of the premises created an unreasonable risk of harm to the claimant; (3) the owner knew or reasonably should have known of the condition; (4) the owner failed to exercise ordinary care to protect the claimant from danger; and (5) the owner's failure was a proximate cause of injury to the claimant. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). The scope of the duty owed to the claimant depends on the claimant's status when the incident occurred, whether the claimant was an invitee, a licensee, or a trespasser. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

An invitee is one that enters the owner's land with the owner's knowledge and for the mutual benefit of both. *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A licensee is one that enters and remains on the owner's land with the owner's consent and solely for the licensee's own purposes. *Id*. at 134. The landowner must use reasonable care to protect an invitee from known conditions that create an unreasonable risk of harm and conditions that should be discovered by the exercise of reasonable care. *CMH Homes, Inc. v. Daemem*, 15 S.W.3d 97, 101 (Tex. 2000); *Ruvalcaba*, 64 S.W.3d at 134.

In contrast, the landowner's duty to a licensee is such that the owner must refrain from injuring a licensee willfully, wantonly, or through gross negligence; the owner or occupier who has actual knowledge of a dangerous condition unknown to the licensee must warn of or make safe the dangerous condition. *Ruvalcaba*, 64 S.W.3d at 134. Additionally, a licensee plaintiff must prove the defendant had actual knowledge of the dangerous condition. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2009, no pet.). For an invitee plaintiff, the standard is actual or constructive knowledge of

7

the dangerous condition. *Id.*

Actual knowledge requires knowledge that the dangerous condition existed at the time of the incident as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time. *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2001). Circumstantial evidence establishes actual knowledge only when it "either directly or by reasonable inference" supports that conclusion. *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002).

## IV.   APPLICATION

### 1.   NEGLIGENCE CLAIM

In its first issue, Harris County argues that the trial court should have dismissed Lopez's negligence claim. We agree with Harris County.[2]

Lopez pleaded negligence and premises liability claims, but the Texas Supreme Court's interpretation of the Tort Claims Act does not allow her to assert both claims against Harris County for the same alleged act concerning the elevator's condition. *See Miranda*, 133 S.W.3d at 233. For this reason, the trial court erred by denying Harris County's motion for summary judgement and plea to the jurisdiction regarding the negligence claim. We sustain Harris County's first issue.

### 2.   PREMISES LIABILITY CLAIM

#### A.   Lopez was a Licensee.

In its second issue, Harris County asserts that the trial court should have also dismissed Lopez's premises liability claim. According to Harris County, Lopez was a licensee, not an invitee, and therefore Lopez needed to demonstrate that Harris County had actual knowledge of the dangerous condition as opposed to

---

[2] Lopez's appellate brief focuses entirely on her premises liability claim; she does not address her negligence claim.

constructive knowledge. Ultimately, though, Harris County argues that Lopez's claim should be dismissed regardless of whether she is categorized as an invitee or licensee because Harris County had neither actual nor constructive notice of the dangerous premise condition.

Lopez argues that Civil Practice and Remedies Code § 101.022(a) applies to make her an invitee rather than a licensee, claiming that she paid for "use of the premises" when she paid an application fee to the state to become a licensed court interpreter. Our analysis in *Simpson* aids our resolution today. *See Simpson v. Harris County*, 951 S.W.2d 251, 254 (Tex. App.—Houston [14th Dist.] 1997, no pet.). In *Simpson*, the plaintiff was injured on the steps of the FLC and filed suit against Harris County, arguing that she was an invitee because she had paid a filing fee to institute her divorce proceedings. *Id.* at 252. We noted that court-filing fees were used to support the judiciary and its related support services. *Id.* at 253. Accordingly, we determined that the plaintiff did not gain invitee status by virtue of paying a court filing fee because her payment was not for the purpose of "using" the courthouse premises as contemplated by § 101.022 of the TTCA. *Id.* at 254.

Similarly, in the present case, there is no indication that Lopez's payment of a license application fee to the State was for the purpose of using the FLC. Lopez's court interpreter license application fee was paid to the government to allow Lopez to perform services as a court interpreter, not for use of the FLC building. *See id.*

Although they do not serve as binding authorities, we find the analysis of other intermediary appellate courts to be insightful. The Dallas Court of Appeals has held that "a fee that merely relates to the premises is not sufficient under the Tort Claims Act to constitute payment for use of the premises." *City of Dallas v. Davenport* 418 S.W.3d 844, 848 (Tex. App.—Dallas 2013, no pet). In *Davenport*, the plaintiff was injured in an underground tunnel on his way from baggage claim to the parking garage at the airport. *See id.* at 846. The plaintiff argued that he was

an invitee because he paid to use the premises by buying an airplane ticket and paying to park his car in the airport parking lot. *See id.* at 849. However, the Dallas Court of Appeals concluded that those payments did not grant him invitee status in the airport terminal because the fees were not paid specifically for the use of the terminal in the area where he was injured. *Id.* In reaching this conclusion, the court noted that members of the public could be in this area of the airport without having to pay to use the airport:

> The undisputed evidence was that people could be in this part of the airport even if they had not paid to park or purchased an airline ticket. But, under Davenport's analysis, the City would owe a lesser duty to people in the area where Davenport fell if they had not purchased an airline ticket or had not paid to park in the airport parking garage. We see "no rational basis," however, for distinguishing between people in this part of the airport on the basis of whether they purchased an airline ticket, paid to park their car in the airport parking garage, or arrived at the airport by cab or other means.

*Id.*

Similarly, under Lopez's analysis, Harris County would owe a lesser duty to individuals on the elevator at the FLC if they are not court interpreters or have not paid some sort of licensing fee. *See id.* We find no rational basis for distinguishing between individuals on the elevator on the basis who have paid a court licensing fee and individual members of the public who use the FLC premises, including the elevator where Lopez was injured. *See id.*

Lopez cites to *City of Fort Worth v. Posey*, in support of her argument that she was an invitee. 593 S.W.3d 924, 930 (Tex. App.—Fort Worth 2020, no pet.). *Posey* is distinguishable from the present case. The plaintiff in *Posey* paid the host of a gift fair event an entry fee and a parking fee. *Id.* The host then paid the city of Fort Worth for the use of the coliseum where the gift fair was being held. *Id.* The

10

plaintiff was injured on the sidewalk in between the premises and the parking lot which was owned by the city and open to the public. *Id.* at 931. The Fort Worth Court of Appeals held that the entry fee and parking fee paid in *Posey* were specifically for access and use of the coliseum and the sidewalk connecting the parking lot and the coliseum. *Id.* Unlike Lopez, the plaintiff in *Posey* submitted a contract and provided testimony that showed her payments "endowed her with the express right to use the walkway [on which she was injured] to travel between the parking lot and the gift fair." *Id.* Lopez has not proved that she had such express right to use the FLC by virtue of her license application fee.

Therefore, we conclude that Lopez was a licensee.

**3. Harris County did not have Actual Knowledge.**

Because Lopez was a licensee, in order to defeat the plea to the jurisdiction, she must prove that Harris County had actual knowledge or awareness that Elevator #1 presented an unreasonable risk of harm at the time of the incident. *Ruvalcaba*, 64 S.W.3d at 134. "[C]ourts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition" to determine actual knowledge. *Univ. of Tex.-Pam Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008). Elevator #1's call logs show that there were prior complaints about the elevator getting stuck but none of the calls reported the elevator doors shutting on people or causing injury. The maintenance logs also demonstrate that Elevator #1 was regularly serviced by Amtech and none of these records document any issues of Elevator #1's doors closing on people. [1CR:60]. Because neither the phone log reports nor the maintenance log reports show incidents of prior injuries or reports of Elevator #1 malfunctioning in this specific manner, they do not prove that Harris County had actual knowledge of this specific dangerous condition at the time of Lopez's injury. Although Harris County

11

had knowledge that Elevator #1 had been repaired prior to Lopez's injury, there is no evidence to indicate that Harris County had actual knowledge of the danger that Elevator #1 might unexpectedly close. *See Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010) (per curiam) ("Awareness of a potential problem is not actual knowledge of an existing danger."). Additionally, Lopez's testimony that a passenger on the elevator claimed the same thing had happened to his wife is not proof of Harris County's actual knowledge because there is no evidence that Harris County knew of the occurrence, that the incident was reported, or that the incident occurred on Elevator #1. *See Aguilar*, 251 S.W.3d at 513.

The El Paso Court of Appeals reached a similar conclusion in a factually similar scenario. In *Baker*, the plaintiff sued El Paso County after the county courthouse's elevator closed on her. *See County of El Paso v. Baker*, 579 S.W.3d 686, 694 (Tex. App.—El Paso 2019, no pet.). As in the present case, the county elevator maintenance logs in *Baker* indicated no prior reports of any problems with the doors of that specific elevator closing on individuals but there were reports of the elevator getting stuck or generally not working. *Id.* at 693. Similar to Lopez, the plaintiff submitted a news article reporting that a woman got stuck in one of the courthouse elevators. *See id.* The *Baker* Court determined that the newspaper and call and maintenance logs did not establish that El Paso County was "actually aware of a defect with the elevator doors" because there were no reports of the elevator closing on and injuring people. *Id.* at 695. The evidence submitted in the present case similarly does not establish proof that Harris County was actually aware of a defect with Elevator #1 with respect to closing on people. *See id.* Accordingly, we conclude that the trial court erred by denying Harris County's plea to the jurisdiction and motion for summary judgment because Lopez has not demonstrated that the trial court had subject matter jurisdiction. *See Miranda,* 133 S.W.3d at 226. We sustain Harris County's second issue.

## V. CONCLUSION

We reverse the trial court's judgment and render judgment dismissing the negligence and premise liability claims against Harris County for want of jurisdiction.


/s/    Randy Wilson
Justice


Panel consists of Justices Wise, Poissant, and Wilson, (Poissant, J., dissents).